NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SWEET PEOPLE APPAREL, INC., et al., : | |
| : | Civil Action No. 11-1666 (SRC) |
| Plaintiffs, : | |
| : | **OPINION** |
| v. : | |
| : | |
| FAME OF NY, INC., et al., : | |
| : | |
| Defendants. : | |

**CHESLER**, District Judge

This matter comes before the Court on the motion by Plaintiffs for a preliminary injunction, an asset freeze and seizure/impoundment of the infringing products. Defendants have opposed this motion. The Court has considered the papers filed by the parties. It rules on this motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the following reasons, Plaintiffs' motion will be granted.

**I.   BACKGROUND**

Plaintiffs are three popular jeanswear companies. Defendants are a series of "pop-up" stores located in malls across America that sell budget jeanswear. Plaintiffs filed their complaint on March 25, 2011 alleging, *inter alia*, copyright and trademark infringement for copying designs and hang tags used by Plaintiffs. At that time, Plaintiffs also sought a temporary restraining order. At issue are a number of copyright and trademark registrations owned by Plaintiffs. Among these are included: Sweet People's Sparkle Cross Design; Sweet People's Wing Design; Sweet People's Beaded Cross Design; Sweet People's Silver Studded Fleur de Lis Design; Sweet

People's Ebony Studded Fleur de Lis Design; Sweet People's Love Live For Every Occasion Hang Tag Design; MEK Denim's "M" Design Trademark; and True Religion's "U" Design Trademark. On March 29, 2011 this Court held a hearing where it granted Plaintiffs' request for a temporary restraining order and ordered expedited discovery. The Court's visual comparison of the various alleged infringing pocket designs and hang tags confirmed that Defendants' respective products are virtually indistinguishable from those of Plaintiffs'. While Defendants argue that the designs are in the public domain, that may be true as to the theme, but the striking resemblance is simply not accounted for by this explanation.

**II.    DISCUSSION**

    **A.    Preliminary Injunction**

Plaintiffs seek a preliminary injunction against Defendants' continued sale of alleged counterfeits and infringements of Plaintiffs' jeanswear designs. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374 (2008).

        i.    <u>Success on the Merits</u>

Plaintiffs' preliminary injunction rests on two basic underlying claims: copyright infringement and trademark infringement and counterfeiting. As to the former, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Sweet People owns copyrights relating to the contested designs. (Kim Decl., ¶¶ 8-17,

Exs. A-L). Accordingly, under Section 410(c) of the Copyright Act, Sweet People has a presumption of ownership, originality and copyrightability in the works at issue.[1] Because of this presumption, the defendant bears the burden of proving invalidity. *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 (3d Cir. 1990). Defendants attempt to meet this burden by showing that Plaintiffs' copyrighted designs were taken from the public domain. (Goldaper Decl., Exs. E-G). While the internet images used in support of Defendants' argument are thematically similar to Plaintiffs' designs, they do not bear the striking resemblance that Plaintiffs' designs do. Accordingly, Defendants have not met their burden.

Under *Feist*, copying may be proven circumstantially by demonstrating "(1) that the defendant had access to the allegedly infringed copyrighted work, and (2) that the allegedly infringing work is substantially similar to the copyrighted work." *Cottrill v. Spears*, 87 F. App'x 803, 805 (3d Cir. 2004). As for access, not only are Plaintiffs products widely available, but Defendant Lee admitted in his deposition that he buys samples from retail stores such as Macy's, a store that sells Plaintiffs' products, in order to come up with styles. (Kim Decl., ¶ 4; Veronick Suppl. Decl. Ex. I at 69:11-70:15). Finally, as this Court earlier found at its March 29, 2011 hearing, the allegedly infringing jeans are strikingly similar to the Plaintiffs' jeans. Accordingly, Plaintiffs have demonstrated a likelihood of success on the merits as to their copyright infringement claim.

"To establish trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, a

---

[1]Section 410(c) of the Copyright Act provides in part:
> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate.

plaintiff must prove that (1) the mark is valid and legally protectable, (2) it owns the mark, and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods or services." *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008). Plaintiffs are the registered owners of the trademarks at issue. (Kim Decl., Ex. M; DeFazio Decl., Ex. B; Beattie Decl., Ex. B). This is "*prima facie* evidence of the validity of the registered mark." 15 U.S.C. § 1115(a).

The Third Circuit has established a set of ten factors which may indicate a likelihood of confusion: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark: (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of similarity of functions; and (10) other factors suggesting the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market. *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182 (3d Cir. 2010) (citing *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)).

"[W]hile it is true that a district court may find that 'certain of the *Lapp* factors are inapplicable or unhelpful in a particular case,' the court must still 'explain its choice not to employ those factrs.'" *Id.* (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237

4

F.3d 198, 214 n.8 (3d Cir. 2000)).  Accordingly, the Court will now turn to an analysis of the *Lapp* factors.

Similarity of Marks

This Circuit has repeatedly held that "[t]he single most important factor in determining likelihood of confusion is mark similarity."  *Sabinsa*, 609 F.3d at 183 (citing *A & H Sportswear*, 237 F.3d at 216).  With regard to Plaintiffs' relevant trademarks this Court found in its earlier hearing and maintains that Defendants' alleged infringing designs are virtually identical.  In assessing likelihood of confusion, the Court considers whether "ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship." *Id.* (citing *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 477 (3d Cir. 1994). Because ordinary consumers are only supposed to have a "general recollection" of the first mark when encountering the second, Defendants argument concerning the minute differences in the products (Goldaper Decl., ¶ 43) is of no moment.

Strength of Plaintiffs' Mark

The strength of the owner's mark is determined by measuring "(1) the distinctiveness or conceptual strength of the mark; and (2) the commercial strength or marketplace recognition of the mark." *A & H Sportswear*, 237 F.3d at 221.  Defendants argue that back pocket ornamentation is so widespread in the jean industry that "the consumer is no longer able to associate a particular brand of jeans with particular back pocket ornamentation."  (Goldaper Decl., ¶ 50).  This conclusion simply does not logically follow from the premise.  In fact, the New York Times included True Religion as one of several premium jeanswear brands where the "distinct pocket [is] the same thing as a logo[.]" (Veronick Reply Decl., Ex. B).  This comment is

5

indicative of the notion that the marks are both distinctive and hold marketplace recognition.

Price and Other Factors Indicative of Consumer Sophistication

"When consumers exercise heightened care in evaluating the relevant products before making purchasing decisions, courts have found there is not a strong likelihood of confusion." *Sabinsa*, 609 F.3d at 186.  In the present case, it is clear that consumers of Plaintiffs' jeanswear products are at least somewhat discerning in their purchases.  It is unlikely that they would confuse Plaintiffs' products with Defendants' products in large part due to the great price differential as well as the differing retail outlets.  This factor weighs in favor of Defendants.

Actual Confusion

Defendants state that they began selling their jeans about one year ago.  (Defs.' Br. at 22). They point out that Plaintiffs have not shown any evidence of actual confusion during this time. This is correct; however, the Third Circuit has repeatedly found that "[e]vidence of actual confusion is frequently difficult to find."  *Sabinsa*, 609 F.3d at 187.  Accordingly, it is not a prerequisite to a finding of likelihood of success.  *Id.*

Intent

Defendant Lee admitted to using other jeanswear products as "samples" for his vendor. (Veronick Supp. Decl., Ex. I at 69:14-70:15).  This admission, along with the striking similarity between Plaintiffs' products and Defendants' alleged infringing products shifts this factor in favor of Plaintiffs.

Marketing/Targets

Neither party sufficiently addresses its respective marketing/advertising methods such that the Court can make a determination as to the seventh *Lapp* factor.  With regard to the eighth

6

factor, Defendants claim that their target demographic differs from Plaintiffs' because of the price difference between their products and Plaintiffs' products. It is likely that there are jeanswear consumers that confine their shopping to high end products and would not consider a budget option such as Defendants'. Similarly, there are consumers that simply could not afford Plaintiffs' products. However, Defendants' argument ignores the fact that there is a middle group of consumers that would consider buying either parties' product. Accordingly, the eighth *Lapp* factor weighs slightly in favor of Plaintiffs.

Relationship of the Goods in the Minds of Consumers

The ninth factor focuses on "whether the consumer might . . . reasonably conclude that one company would offer both of these related products." *Sabinsa*, 609 F.3d at 189 (quoting *Fisons*, 30 F.3d at 481). Plaintiffs make two strong points relating to this factor. First, the fashion industry has a practice of high end lines putting out lower-priced "diffusion" lines.[2] (Veronick Reply Decl., Exs. C-D). Thus, while consumers might not think the alleged infringing products are Plaintiffs' brands, they may nonetheless think they are affiliated.[3] Additionally, Plaintiffs address the doctrine of "post-sale confusion" where consumers may be confused as to the origin of a product when seen outside of stores. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872-73 (2d Cir. 1986). The likelihood that consumers in the instant case would be confused increases exponentially where tags have been discarded and the pocket

---

[2]This same practice lends support to Plaintiffs with regard to the tenth *Lapp* factor which addresses why consumers might expect the mark owner to expand into defendant's market.

[3]The Lanham Act prohibits direct confusion as well as affiliation confusion; one may not "deceive as to the affiliation, connection or association . . . origin, sponsorship, or approval" of the infringing product. 15 U.S.C. § 1125(a)(1)(A).

stitching bears such a striking resemblance.  This factor clearly weighs in favor of Plaintiffs.

Based on the foregoing analysis it is clear that Plaintiffs have established a likelihood of confusion.  Accordingly, they have also demonstrated a likelihood of success as to their trademark claim.

### ii.   Irreparable Harm

The Third Circuit has found "that a showing of a *prima facie* case of copyright infringement or reasonable likelihood of success on the merits raises a presumption of irreparable harm."  *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983).  Moreover, irreparable injury is shown if "a plaintiff demonstrates a significant risk that he . . . will experience significant harm that cannot adequately be compensated, after the fact, by monetary damages."  *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000).  Plaintiffs have shown that their goodwill and reputations will continue to be damaged without the issuance of this preliminary injunction.  Plaintiffs have established the second prerequisite for a preliminary injunction.

### iii.   Balance of Hardships

Defendants fail to address this factor.  Plaintiffs have argued, and the Court is convinced that the lack of a preliminary injunction would cause harm to Plaintiffs' goodwill and reputations.  On the other hand, the issuance of this preliminary injunction does not prohibit Defendants from doing business, it merely precludes them from selling certain products.  Accordingly, the balance of hardships weighs in favor of Plaintiffs.

### iv.   Public Interest

Finally, Defendants also fail to address the public interest.  Courts have repeatedly held

that copyright and trademark law protects not only individual parties, but the public at large. *See, e.g., Apple Computer*, 714 F.2d at 1255 ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections . . . ."); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 n.14 (1982) ("[T]he infringer deprives consumers of their ability to distinguish among the goods of competing manufacturers."). In prevailing on this final factor, Plaintiffs have shown that they are entitled to preliminary injunctive relief.

    **B.**    **Asset Freeze**

Plaintiffs seek a preliminary order freezing $200,000 in funds located in the corporate Defendants' 52 different bank accounts. The Court requested supplemental briefing relating to the impact of *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Funds, Inc.*, 527 U.S. 308 (1999). The *Grupo Mexicano* Court held that a court was not permitted to freeze a defendant's assets solely to preserve a plaintiff's right to recover damages. *Grupo Mexicano*, 527 U.S. at 325. However, the Court indicated that a prejudgment asset freeze would be appropriate in cases seeking equitable relief. *Id.* Here, Plaintiffs are seeking an equitable accounting of Defendants' profits under the Copyright and Trademark Acts. In the wake of *Grupo Mexicano* courts have repeatedly upheld the use of prejudgment asset freezes in cases seeking equitable relief. *See, e.g., Animale Group, Inc. v. Sunny's Perfume, Inc.*, 256 F. App'x 707, 708 (5th Cir. 2007). In *Animale* the court found that a freeze was appropriate because Plaintiffs sought an accounting of lost profits under the Lanham Act -- equitable relief. As such, the Court will grant Plaintiffs' request for an asset freeze.

    **C.**    **Seizure of Infringing Products**

Because Plaintiffs have demonstrated that they are entitled to preliminary injunctive

relief, they are also entitled to a seizure of counterfeit goods under the Lanham Act, 15 U.S.C. § 1116 and the impoundment of infringing goods under the Copyright Act, 17 U.S.C. § 503.  *See, e.g., WPOW, Inc. V. MRLJ Enters.*, 584 F. Supp. 132, 135 (D.D.C. 1984); *Vuitton v. White*, 945 F.2d 569, 572-73 (3d Cir. 1991).

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' motion for a preliminary injunction, an asset freeze and seizure/impoundment of the infringing products.  An appropriate form of Order will be filed with this Opinion.

>  \_s/Stanley R. Chesler_____
>  STANLEY R. CHESLER
>  United States District Judge

DATED: July 19, 2011